United States District Court
Southern District of Texas
**ENTERED**
August 25, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-22-3790 |
| SEVERIANO CORTEZ and NELDA CORTEZ, | § § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

G&G Closed Circuit Events, LLC sued Severiano Cortez and Nelda Cortez, both doing business as Eden's Landing, under the Federal Communications Act. G&G alleged that the defendants had illegally intercepted and exhibited a broadcast of a boxing match without paying or obtaining authority from G&G, which held the license. The Cortezes failed to answer the complaint or otherwise appear, making entry of default proper. Default was entered against the Cortezes on July 20, 2023. (Docket Entry No. 15).

G&G has filed a motion for default judgment against the Cortezes, individually and doing business as Eden's Landing. G&G has filed affidavits and exhibits in support of its claims for damages and reasonable attorney fees. Notice to the defendants and further hearings are not necessary. Fed. R. Civ. P. 55(b)(2).

G&G's submissions establish unauthorized interception and exhibition of a boxing match broadcast, in violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. G&G owns the right to exhibit and sublicense the right to exhibit the broadcast of the November 2, 2019, boxing match between Saul "Canelo" Alvarez v. Sergey Kovalev. (Docket

Entry No. 1 at 3). Only Texas establishments that G&G contractually authorized could lawfully broadcast the match. Neither Eden's Landing, the Cortezes, nor any representative contracted to obtain the rights to broadcast the boxing match or paid the commercial fee to do so. The Cortezes intercepted (or assisted in intercepting) the broadcast boxing match and displayed it to patrons without paying licensing fees.

Based on the pleading, motions, briefs, the evidence presented, and the applicable law, the motion for default judgment, (Docket Entry No. 14), is granted. Judgment is entered in the amount of $21,800.00 against the Cortezes. An order of final judgment is separately entered.

The reasons are explained below.

**I.      The Legal Standard**

If damages can be calculated with certainty, Rule 55(b) provides for judgment "against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). "The Fifth Circuit has held that a 'party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.'" *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting reference omitted). A "default judgment must be 'supported by well-pleaded allegations' and must have 'a sufficient basis in the pleadings.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting reference omitted).

When, as here, the pleadings are sufficient, the court must determine whether the record supports the damages requested. The plaintiff's submission of "the amount of damages and attorney's fees he feels he should be awarded" is insufficient to compute the damages amount without "support in the record and [a] method of determining the accuracy of those totals. Mere statements of award values without any indication of how those amounts were reached cannot rise

to the level of an amount liquidated or capable of mathematical calculation." *Richardson v. Salvation Army*, 161 F.3d 7, 7 (5th Cir. 1998). "The court may rely on detailed affidavits or documentary evidence, supplemented by the judge's personal knowledge, to evaluate the proposed sum." *Id.*

Section 605 of the Communications Act governs the "unauthorized publication or use of communications." 47 U.S.C. § 605. Section 605 states in relevant part as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605.

A party violates section 605 by displaying an intercepted communication. Under section 605(e)(3), the "party aggrieved" may elect to recover either the actual damages sustained or statutory damages for each violation, in a sum of not less than $1,000.00 or more than $10,000.00. If the court finds that the violation was committed "willfully" or for the purpose of direct or indirect commercial advantage or private financial gain, the court may increase damages by an amount of not less than $10,000.00 and not more than $100,000.00.

**II.     Analysis**

The record establishes that the Eden's Landing displayed the boxing match, without authorization, for commercial gain, establishing liability under section 605. Section

605(e)(3)(C)(i)(II) gives the court discretion to determine statutory damages between $1,000.00 and $10,000.00 for each violation.

Several factors present in this case favor granting the maximum statutory damages of $10,000.00, as requested. The record includes a copy of the license agreement granting G&G an exclusive license to three events, including the November 2, 2019, match between Alvarez and Cortez. (Docket Entry No. 14-1). The record, including an affidavit from a witness who was present during the broadcast, proves the broadcast. The record also shows that the broadcast was done intentionally and not by accident or mistake. (Docket Entry No. 14-1 at 41, 73). These factors, the difficulty in detecting unlawful interception, the widespread problem of piracy, the projected loss to G&G, and the need for an award sufficient to deter future piracy, weigh in favor of granting the maximum statutory damages. G&G has shown the basis for an award of $10,000.00 in damages under section 605(e)(3)(C)(i)(II).

G&G also seeks an award of additional, punitive damages. Section 605 states that in any case in which the court finds that the violation was committed willfully and for the purpose of direct or indirect commercial advantage or private financial gain, the court may increase the damages award by no more than $100,000.00. 47 U.S.C. § 605(e)(3)(C)(ii). The record shows that approximately 50 people were present for the broadcast, and the establishment had a capacity of approximately 240 people. (Docket Entry No. 14-1 at 41–42). The Lounge advertised the broadcast in advance, on social media. (Docket Entry No. 14-1 at 73). The record supports an additional damages award of $10,000 for a willful violation.

As the prevailing party, G&G is entitled to an award of its costs, including reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii). "In determining the appropriate amount of attorney's fees, a district court first must calculate the 'lodestar' by 'multiplying the reasonable

number of hours expended on the case by the reasonable hourly rates for the participating lawyers.'" *Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021) (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). Whether an hourly rate is reasonably depends on whether that rate is consistent with the "hourly rate in the community for the work at issue." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). In a sworn affidavit, counsel for G&G asserts that he worked 6 hours at an hourly rate of $300.00. (Docket Entry No. 14-1 at 54–55). The court finds that this rate is reasonable. G&G also requests attorney's fees for post-trial and appellate services. The court denies these fees as speculative and premature, but grants leave to G&G to seek recovery of these fees if and when they are incurred. The total fees awarded to counsel for G&G is $1,800.00.

Given this record, the court concludes that G&G has established its entitlement to default judgment against the Cortezes in the amount of $10,000.00 in statutory damages; $10,000.00 in enhanced damages; reasonable attorney's fees in the amount of $1,800.00, and postjudgment interest at the rate of 5.36% per annum. Final judgment will be entered by separate order.

SIGNED on August 25, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge